UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-CR-102-JEB |
| v. : | |
| : | |
| KIMBERLY SYLVESTER, : | |
| : | |
| **Defendant** : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Kimberly Sylvester has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Kimberly Sylvester to 21 days incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.     Introduction

Defendant Kimberly Sylvester, 59 and a former registered nurse, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

1

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Sylvester pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by the defendant's (1) early presence inside the Capitol Building (within 10 minutes of initial breach) and (2) extended duration in the Capitol Building (close to an hour).

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Sylvester's crime support a sentence of 21 days incarceration and 36 months' probation in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 1.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Sylvester's Role in the January 6, 2021 Attack on the Capitol*

While at then-President Trump's Stop the Steal rally, Sylvester texted another individual ("Person 1"), "We are at the rally !! Holy shit the people here. Have seen Antifa but not many and none in this crowd." Person 1 responded, "Hi Honey! That's really good! Show of force! Good keep them out scare them! Love you too! Mwah!" Sylvester then liked the message calling for a "show of force" and "scare them." Sylvester's next message was, "Marching to Congress."

At approximately 2:13 p.m., rioters breached the Senate Wing Door on the Northwest side by breaking an adjacent window and climbing through. Rioters then opened the Senate Wing Door – it was the first breach of the US Capitol Building. The Senate Wing Door was an emergency exit door and when opened, set off a high-pitched alarm. The alarm sounded at 2:16 p.m. and continued sounding at 2:25 p.m., as rioters streamed in. At approximately 2:22 p.m., Sylvester entered the U.S. Capitol building through the Senate Wing Door while the alarm was blaring, with rioters still climbing through the broken window immediately to her left. *See* Image 1.



**Image 1: Screenshot from Senate Wing Door Surveillance Footage, Sylvester Circled in Red**

Once inside the Capitol Building, Sylvester walked through the North Crypt Lobby, Main Door Hall, and Statuary Hall. As Sylvester walked through the Statuary Hall, the corridor filled with smoke from an unknown source. *See* Image 2.



**Image 2: Screenshot from Statuary Hall Surveillance Footage, Sylvester Circled in Red**

Sylvester then walked through the U.S. Capitol Rotunda at approximately 2:55 p.m. The Rotunda is at the very center of the joint session process enshrined in law and required for the transfer of presidential power. Image 3 illustrates with blue arrows how the Senate progresses through the Rotunda and into the House for the joint session.

4



**Image 3: Illustration of Senate Progression through the Capitol Building for the Joint Session of Congress**

Indeed, on the morning of January 6, 2021, the joint session initiated the day's process with staffers carrying the required paper ballots for the Electoral College Certification Vote from the Senate to the House through the Rotunda. The solemn and orderly process in the Rotunda, depicted in Image 4 below, is a far cry from the chaotic and criminal mayhem Sylvester wrought in the Rotunda just two hours later, depicted in Image 5. So long as Sylvester was in that Rotunda, the joint session, and therefore the transfer of power, could not proceed.



**Image 4: Photograph of Senate Progression Through the Rotunda on January 6, 2021**



**Image 5: Photograph of Sylvester Occupying the Rotunda on January 6, 2021, Sylvester circled in Yellow**

After leaving the Rotunda and walking through the Crypt, Sylvester exited the Capitol Building through the Senate Wing Door at approximately 3:21 p.m. *See* Image 6.



**Image 6: Screenshot from Surveillance Footage of Senate Wing Door, Sylvester Circled in Red**

### Sylvester's Interview with the FBI

On December 14, 2021, Sylvester was interviewed by the FBI. During the interview, Sylvester admitted to entering the Capitol Building through the Senate Wing Door. Sylvester stated that she had no idea that she was doing anything wrong when she entered the Capitol Building. Sylvester failed to mention the emergency exit alarm that sounded as she entered the Capitol Building or the rioters that climbed through a broken window immediately to her left – both of which made abundantly clear that she was not welcome inside the Capitol Building. After Sylvester's arrest on December 13, 2023, she voluntarily provided the FBI with her cell phone and consented to a search of it. The text messages referenced above were recovered from the search.

*The Charges and Plea Agreement*

On February 27, 2024, the United States charged Sylvester by a two count Information with violating 40 U.S.C. 5104(e)(2)(D) and (G). On March 7, 2024, pursuant to a plea agreement, Sylvester pleaded guilty to Counts One and Two of the Information, charging her with a violation of 40 U.S.C. 5104(e)(2)(D) and (G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Sylvester now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days incarceration on Count One and 36 months' probation on Count Two.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

8

*v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Sylvester's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Sylvester, the absence of violent or destructive acts is not a mitigating factor. Had Sylvester engaged in such conduct, she would have faced additional criminal charges.

The most important factors in Sylvester's case are her early entrance into the Capitol Building (within ten minutes of the first breach at 2:13 p.m.) and her extended presence in the Capitol Building (approximately an hour). As she ventured through the Capitol Building, Sylvester had ample opportunity to observe overwhelmed police officers, destruction of property, and violence – all of which should have prompted Sylvester to leave far earlier than she did.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. SYLVESTER's History and Characteristics

Sylvester does not have a criminal history and is not, to the government's knowledge, a member of any militias or extremist groups.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a sentence of incarceration. Sylvester acknowledged her presence inside the Capitol Building during a voluntary interview on December 14, 2021, but minimized the obvious wrongfulness of her actions on January 6th. Sylvester claimed that she had entered later in the day and after most of the rioters had entered the Capitol Building – in reality, she entered the Capitol Building within the first ten minutes of its breach while the emergency exit alarm was blaring and rioters were climbing through the window immediately to her left. After her arrest, in her interview

with the Probation Officer, Sylvester recognized her poor decisions and the shamefulness of her actions. *See* PSR at ¶ 27.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Sylvester based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Sylvester has pleaded guilty to Counts One and Two of the Information, charging her with Disorderly and Disruptive Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count One) and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Lawrence Dropkin*, 21-cr-234-JEB, the defendant, like Sylvester, entered the Capitol Building within ten minutes of the initial breach, remained inside the Capitol Building for close to an hour, and went through several sections of the Capitol Building. Unlike Sylvester, Dropkin had prior interactions with law enforcement including public urination and disorderly conduct/fighting charges. However, Dropkin did not send or like text messages that referenced a "show of force" and "scare them" prior to walking to the Capitol Building. Nor did Dropkin attempt to claim that he didn't realize his presence was unlawful while walking through scenes of chaos, destruction of property, and violence. For his conduct, the Court sentenced Dropkin to 30 days incarceration, in line with the Government's recommendation.

In *United States v. Caleb Jones*, 21-cr-321-JEB, the defendant, like Sylvester, entered the Capitol Building shortly after the initial breach and interviewed with the FBI. Unlike Sylvester, the defendant scaled a Capitol Building exterior wall to access the Capitol Building but was only inside the Capitol Building for approximately 15 minutes compared to Sylvester's 60 minutes. Jones also expressed remorse shortly after his interview in contrast to Sylvester maintaining that she had no idea she was doing anything wrong when she entered the Capitol Building and only expressing contrition after her arrest. For his conduct, the Court sentenced Jones to two months home detention, one month less than the Government's recommendation.

In *United States v. Colton Wargo*, 22-cr-319-RCL, the defendant, like Sylvester, entered the Capitol Building shortly after the initial breach and walked through various sections of the Capitol Building. Unlike Sylvester, Wargo was only present in the Capitol Building for

approximately 30 minutes compared to Sylvester's 60 minutes, did not record any photographs or video, and did not send or like text messages that referenced a "show of force" and "scare them." Like Sylvester, Wargo was not truthful in his interview with the FBI and initially denied being inside the Capitol Building. For his conduct, Judge Lamberth sentenced Wargo to fourteen days incarceration, in line with the Government's recommendation.

Again, while Sylvester's conduct is not identical to any of the above-mentioned defendants, the combination of factors, including method and time of entry into the Capitol Building and the amount of time she spent in the Capitol Building suggest that a sentence of 21 days incarceration would be sufficient to avoid unwarranted sentencing disparities with other defendants who were similarly situated.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Sylvester must pay $500 in restitution, which reflects in part the role Sylvester played in the riot on January 6.[4] Plea Agreement at ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Sylvester's restitution payment must be made to the

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 10.

## V. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 21 days incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Sylvester's liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Shalin Nohria*

Shalin Nohria
Assistant United States Attorney
D.C. Bar No. 1644392
United States Attorney's Office
601 D St. NW, 6.713
Washington, D.C.,
202-344-5763
shalin.nohria@usdoj.gov